DAVID GROSSMAN (SBN 211326)
dgrossman@loeb.com
THOMAS NOLAN (SBN 238213)
tnolan@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, California 90067-4120
Tel: (310) 282-2000

Attorneys for Defendant
VIACOM INTERNATIONAL INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GIBSON GUITAR CORP., a Delaware corporation, | Case No.  CV 12-10870 DDP (AJWx) |
| Plaintiff, | Hon. Dean D. Pregerson |
| v. | **DEFENDANT VIACOM INTERNATIONAL INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED.** |
| VIACOM INTERNATIONAL INC., a Delaware corporation; JOHN HORNBY SKEWES & CO. LTD., a United Kingdom Corporation; and DOES 1 through 10, | |
| Defendants. | |
| | Complaint filed:  December 20, 2012 |
| | Date:        March 11, 2013 Time:        10:00 a.m. Courtroom:    3 |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...........................................................................1

FACTUAL BACKGROUND .............................................................................2

ARGUMENT ....................................................................................................4

I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF
SUBJECT MATTER JURISDICTION UNDER RULE 12(B)(1)................4

    A.   On A Motion To Dismiss Under Rule 12(b)(1), The Court
May Consider Evidence Outside The Pleadings And Must
Dismiss When It Lacks Subject Matter Jurisdiction ...........................5

    B.   Gibson's Claim Lacks Subject Matter Jurisdiction Because
All the Allegedly Infringing Activities Occurred Outside
the United States ...............................................................................6

        1.   Prong 1:  There Is No Effect on U.S. Commerce ......................7

        2.   Prong 2:  There Is No Cognizable Injury to Plaintiff
in the United States ..................................................................9

        3.   Prong 3:  There Is No United States Interest
Sufficiently Strong To Justify An Assertion of
Extraterritorial Authority In The United Kingdom.................10

II.   IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE
DISMISSED FOR FAILURE TO STATE A CLAIM ON
WHICH RELIEF MAY BE GRANTED......................................................12

    A.   The Complaint Fails to State a Lanham Act Claim Because
It Does Not Adequately Plead Use of the Mark in United
States Commerce ............................................................................13

    B.   The Complaint Also Fails to State a Lanham Act Claim
Against Viacom Because It Does Not Allege Any
Infringing Activity By Viacom. ......................................................14

III.  BECAUSE PLAINTIFF FAILS TO STATE A VALID
LANHAM ACT CLAIM, THE COURT LACKS
SUPPLEMENTAL JURISDICTION OVER THE RELATED
STATE LAW CLAIMS .............................................................................15

CONCLUSION ...............................................................................................16

# TABLE OF AUTHORITIES

**Page**

CASES

*Anderson v. Clow*,
   89 F.3d 1399 (9th Cir. 1996).............................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................2, 13, 14

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1990)............................................................................13

*Bell v. Twombly*,
   550 U.S. 544 (2007)..........................................................................2, 13, 14

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994)..............................................................................14

*Conley v. Gibson*,
   355 U.S. 41 (1957)............................................................................................12

*Epstein v. Washington Energy Co.*,
   83 F.3d 1136 (9th Cir. 1996)............................................................................13

*Herman Family Revocable Trust v. Teddy Bear*,
   254 F.3d 802 (9th Cir. 2001)............................................................................16

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
   456 U.S. 844 (1982).........................................................................................15

*Kokkonen v. Guardian Life Ins. Co.*,
   511 U.S. 375 (1994)...........................................................................................5

*Love v. Associated Newspapers, Ltd.*,
   611 F.3d 601 (9th Cir. 2010)..................................................................6, 8, 10

*Love v. The Mail on Sunday*,
   473 F. Supp. 2d 1052 (C.D. Cal. 2007) .............................................................8

*Mattel v. Anderson*,
   No. 04 Civ. 5275, 2005 WL 1690528 (S.D.N.Y. Jul. 18, 2005) ........................7

i

1

## TABLE OF AUTHORITIES CONTINUED

**Page**

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011)............................................................5

*Owen Equip. & Erection Co. v. Kroger*,
   437 U.S. 365 (1978)..........................................................................5

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007)..........................................................15

*Pinkberry, Inc. v. JEC Int'l Corp.*,
   No. CV 11-6540, 2011 WL 6101828 (C.D. Cal. Dec. 7, 2011)...............5, 8, 11

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*,
   532 F.3d 963 (9th Cir. 2008)..........................................................13

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004)...........................................................5

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*,
   769 F.2d 1393 (9th Cir. 1985)................................................6, 10, 11

*Stevo Design, Inc. v. SBR Mktg. Ltd.*,
   No. 2:11-CV-0304, 2012 WL 846569 (D. Nev. Mar. 13, 2012)....................8, 9

*Stock West, Inc. v. Confederated Tribes of the Colville Reservation*,
   873 F.2d 1221 (9th Cir. 1989)............................................................5

*Thornhill Publ'g Co. v. General Tel. & Elec. Corp.*,
   594 F.2d 730 (9th Cir. 1979)............................................................5

*Timberlane Lumber Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*,
   549 F.2d 597 (9th Cir. 1976)............................................................6

*W. Mining Council v. Watt*,
   643 F.2d 618 (9th Cir. 1981)..........................................................13

**STATUTES**

15 U.S.C. § 1114..............................................................................6, 13

15 U.S.C. § 1127..................................................................................6

28 U.S.C. § 1331..................................................................................4

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO DISMISS

## <u>TABLE OF AUTHORITIES CONTINUED</u>

<u>**Page**</u>

28 U.S.C. § 1338.....................................................................................................4

28 U.S.C. § 1367............................................................................................15, 16

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(1).......................................................passim

Federal Rule of Civil Procedure 12(b)(6).......................................................passim

MOTION TO DISMISS

1    Defendant Viacom International Inc. ("Viacom") respectfully submits this

2  memorandum of law in support of its motion for an order dismissing Plaintiff's

3  Complaint for lack of subject matter jurisdiction under Federal Rule of Civil

4  Procedure 12(b)(1), and, in the alternative, for failure to state a claim on which relief

5  may be granted under Federal Rule of Civil Procedure 12(b)(6).

6                    **PRELIMINARY STATEMENT**

7        This is case brought under the Lanham Act—a statute that is expressly

8  territorial to the United States—claiming purported trademark infringement

9  occurring entirely outside of the United States.  United States courts lack subject

10  matter jurisdiction over this claim as a matter of law, and it should be dismissed on

11  that ground under Rule 12(b)(1).

12        Gibson Guitar Corporation ("Gibson" or "Plaintiff") claims infringement of its

13  U.S. trademarks in the "Flying V®" guitar by Viacom, a U.S. media company, and

14  John Hornby Skewes & Co. Ltd. ("JHS"), a distributor of musical instruments in the

15  United Kingdom.  Gibson identifies only one allegedly offending product—a "V-

16  styled" ukulele featuring the name, trademark, and logo of *SpongeBob*

17  *SquarePants®*, JHS product code SBUV3 (the "*SpongeBob* Ukulele" or the

18  "Ukulele").  Gibson's claim is doomed as a matter of law, however, because *none* of

19  the acts Gibson claims are infringing were performed in the United States.  The

20  *SpongeBob* Ukulele was manufactured in China and offered for sale by JHS, a

21  United Kingdom corporation, only in a specific Licensed Territory wholly outside

22  the United States.  The only U.S. Defendant is Viacom, and Viacom's only

23  connection to the *SpongeBob* Ukulele is that it licensed JHS to use the *SpongeBob*

24  trademarks on certain musical instruments in the Licensed Territory—expressly

25  excluding the United States.  Indeed, Viacom's license expressly *precludes* JHS from

26  marketing the *SpongeBob* Ukulele in the United States.  U.S. law does not apply to

27  the Ukulele, and Gibson's trademark claims fail for lack of subject matter

28  jurisdiction.

1    In the alternative, the Complaint should be dismissed under Rule 12(b)(6)

2 because it fails to plead any facts on which relief may be granted in a U.S. court.  As

3 above, Gibson claims trademark infringement under the Lanham Act.  In recognition

4 of the Lanham Act's limited territorial scope, Plaintiff makes the bare, unsupported

5 assertion of sales in the United States solely on "information and belief."  As a

6 simple matter of fact, however, there are no sales in the United States and Gibson has

7 no evidence of any sales in the United States.  Moreover, while Gibson's Complaint

8 attempts to lump Viacom and JHS together, it makes no allegations of any actual

9 infringing activity by Viacom—indeed, it acknowledges that Viacom's role in the

10 *SpongeBob* Ukulele arises solely from its trademarks in the *SpongeBob* character,

11 and has nothing to do with the Ukulele's body shape.  Following the Supreme

12 Court's decisions in *Twombly* and *Iqbal*, a plaintiff's pleadings must at least raise a

13 reasonable possibility of a successful claim, and conclusory statements made solely

14 on "information and belief" will not suffice.  The Complaint must be dismissed on

15 this basis as well.[1]

16    **FACTUAL BACKGROUND**

17    Plaintiff Gibson manufactures and distributes electric and acoustic guitars and

18 other instruments.  Among its models is the "Flying V®" electric guitar.  Plaintiff,

19 while describing the "Flying V" in its own material as a "style," claims ownership of

20 three related U.S. trademarks in the "Flying V®" guitar—one in the body-shape

21 design, another in the peg-head design, and a third in the word mark "FLYING V®."

22 (Compl. ¶¶ 14-16).

23 _____

24 [1] This motion is brought solely by Viacom, and not by JHS, because only Viacom
has yet been served with the Complaint.  It appears that Gibson has asked the Court

25 to effect service on JHS (Doc. 9).  If JHS is eventually served, JHS will presumably
respond to the Complaint with all relevant defenses—including, but not limited to,

26 lack of personal jurisdiction.  Viacom does note, however, that dismissal of the
Complaint against it under Rule 12(b)(1) or Rule 12(b)(6) will likely require

27 dismissal of the Complaint as against JHS as well.

28

1   Viacom, on the other hand, is not in the musical instrument business at all.
2   Viacom is a U.S. media company and a subsidiary of Viacom Inc. with its primary
3   operations in motion pictures and cable television.  Among these operations, Viacom
4   produces *SpongeBob SquarePants*®, an animated television series that follows the
5   adventures of the title character and his friends in the underwater city of Bikini
6   Bottom.  Viacom holds trademarks for use of the *SpongeBob* character in the United
7   States, and also in several jurisdictions abroad—including in the United Kingdom.

8   Viacom is involved in this case for one reason, and one reason only.  It granted
9   a limited License to JHS—a U.K.-based distributor of a wide variety of stringed,
10  wind and percussion instruments and related accessories—to use the *SpongeBob*
11  name, trademark, and logo on a novelty line of musical instruments and accessories
12  based on the *SpongeBob* series.  (Declaration of Ashley Holman ("Holman Decl."),
13  filed concurrently, at Exh. A (the "License")).  Viacom did not design the Ukulele,
14  manufacture the Ukulele, or offer the Ukulele for sale, in the United States or
15  anywhere else in the world.  (*Id.* ¶ 2-3).  Moreover, Viacom's License is limited to
16  specified nations in Europe and Asia, as well as Brazil—not including the United
17  States—and expressly provides that JSH "shall not actively solicit orders for the
18  [*SpongeBob* products] outside the Licensed Territory."  (*Id.* at Exh. A).[2]

19  With Viacom's License in-hand, JHS created a *SpongeBob* novelty line of
20  instruments and related accessories.  The line consists primarily of electric and
21  acoustic guitars and related accessories, but also offers several different styles of
22  ukulele featuring the *SpongeBob* marks.  One of those styles—the *SpongeBob*

23

24  [2] In full, the License applies to the United Kingdom, Austria, Belgium, Denmark,
25  Finland, Germany, Iceland, Luxembourg, The Netherlands, Norway, Poland,
    Sweden, Switzerland, Ukraine, Spain, Portugal, Albania, Bosnia and Herzegovina,
26  Bulgaria, the Channel Islands, Croatia, Czech Republic, Ireland, Israel, Kosovo,
27  Macedonia, Romania, Russia, Serbia and Montenegro, Slovenia, Cyprus, France,
    Greece, Italy, Malta, South Africa, Turkey, the United Arab Emirates, and Brazil.
28  (Holman Decl. Exh. A).

3                                      MOTION TO DISMISS

1   Ukulele at issue here—features a V-styled body and symmetrical, pointed headstock

2   with four tuning pegs.  Gibson's lawsuit is based entirely on this V-styled Ukulele.

3          Fatal to Gibson's claim, however, this Ukulele was never offered for purchase

4   or sale in the United States by Viacom or JHS.  (Declaration of Dennis Drumm

5   ("Drumm Decl."), filed concurrently, at ¶¶ 5-6).  JHS is a United Kingdom

6   corporation, with its corporate operations and wholesale distribution activities

7   located in the United Kingdom.  (*Id.* ¶ 2).  JHS designed the Ukulele in the United

8   Kingdom, the Ukulele was produced for JHS in China, and JHS has never offered the

9   Ukulele for sale in the United States—indeed, it was contractually prohibited from

10  doing so.  (*Id.* ¶¶ 5-7).  Plaintiff's Complaint alleges U.S. sales solely upon

11  "information and belief," but there have been no sales in the United States by JHS;

12  indeed, overall sales of the Ukulele were modest, and JHS has since discontinued this

13  particular model for business reasons.  (*Id.* ¶ 8).

14                                            <u>**ARGUMENT**</u>

15  **I.     THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF**

16  **        SUBJECT MATTER JURISDICTION UNDER RULE 12(B)(1)**

17          Plaintiff asserts federal question jurisdiction under 28 U.S.C. §§ 1331 and

18  1338 for its Lanham Act claims and supplemental jurisdiction for its California state

19  law claims.[3]  However, the activities Plaintiff claims are infringing—the alleged

20  manufacture and sale of the *SpongeBob* Ukulele—occurred entirely outside the

21  United States.  Because the Lanham Act applies only to acts in the United States or

22  otherwise having substantial effects in the United States, U.S. courts have no subject

23  matter jurisdiction over Plaintiff's Lanham Act claims, and no supplemental

24  jurisdiction over the related California state law claims.  This case fails as a matter of

25  law, and the Complaint should be dismissed, now and with prejudice.

26

27  _____

28  [3] Diversity jurisdiction is unavailable because Gibson and Viacom are both Delaware
    corporations.  (Compl. ¶¶ 3-4).

MOTION TO DISMISS

**A.     On A Motion To Dismiss Under Rule 12(b)(1), The Court May Consider Evidence Outside The Pleadings And Must Dismiss When It Lacks Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction, *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978), and a "federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Accordingly, Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a claim for lack of subject matter jurisdiction, and when subject matter jurisdiction is at issue, the plaintiff—not the defendant—bears the burden of establishing the jurisdiction it asks the court to invoke. *See, e.g.*, *Pinkberry, Inc. v. JEC Int'l Corp.*, No. CV 11-6540, 2011 WL 6101828, at *2 (C.D. Cal. Dec. 7, 2011) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)).

A Rule 12(b)(1) motion may challenge the Complaint's allegations on their face, but it may also be brought as a factual challenge, by providing evidence outside of the Complaint establishing a lack of subject matter jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Thornhill Publ'g Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). In a factual challenge, the court is not required to accept the allegations of the Complaint as true and may consider additional evidence outside the pleadings. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); *Safe Air*, 373 F.3d at 1039. Moreover, once the moving party has presented evidence showing a lack of subject matter jurisdiction, the burden shifts to "the party opposing the motion [to] furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air*, 373 F.3d at 1309 (citations omitted). If the plaintiff cannot establish the jurisdiction it seeks to invoke, its complaint should be dismissed under Rule 12(b)(1).

**B.**    **Gibson's Claim Lacks Subject Matter Jurisdiction Because All the Allegedly Infringing Activities Occurred Outside the United States**

The Lanham Act regulates trademarks and false advertising in the United States.  It is expressly territorial in its application and has minimal application to activities outside the United States.  15 U.S.C. §§ 1114(1), 1127.  As a result, United States courts lack subject matter jurisdiction over claims involving wholly foreign commerce.  *See, e.g.*, *Star-Kist Foods, Inc. v. P.J. Rhodes & Co*., 769 F.2d 1393, 1395 (9th Cir. 1985) (then-Judge Kennedy) (citing and adopting *Timberlane Lumber Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 549 F.2d 597 (9th Cir. 1976)).

The Ninth Circuit has adopted a three-prong test to determine whether the Lanham Act applies to activities abroad:

> first, there must be some effect on American foreign commerce; second, the effect must be sufficiently great to present a cognizable injury to plaintiffs under the federal statute; and third, the interests of and links to American foreign commerce must be sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority.

*Star-Kist Foods*, 769 F.2d at 1395 (citing *Timberlane*, 549 F.2d 597); *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 612 (9th Cir. 2010).

In evaluating the third prong—the relative strength of the interests of the nations involved—the court balances seven relevant factors:

> the degree of conflict with foreign law or policy, the nationality or allegiance of the parties and the locations or principal places of business of corporations, the extent to which enforcement by either state can be expected to achieve compliance, the relative significance of effects on the United States as compared with those elsewhere, the extent to which there is explicit purpose to harm or affect American commerce, the foreseeability of such effect, and the relative importance to the violations charged of conduct within the United States as compared with conduct abroad.

*Star-Kist Foods*, 769 F.2d at 1395-96.

A balancing of these factors weighs overwhelmingly against any assertion of extraterritorial authority here.

MOTION TO DISMISS

## 1.   Prong 1:  There Is No Effect on U.S. Commerce

Plaintiff can demonstrate no effect on U.S. commerce whatsoever.  Its sole claim against Viacom and JHS is for infringement of the "Flying V®" trademarks by a Ukulele embossed with the image of *SpongeBob SquarePants*.  Viacom did not design the Ukulele, manufacture the Ukulele, distribute the Ukulele, or offer the Ukulele for sale anywhere in the world.  All of those activities were allegedly performed by JHS, a U.K. corporation, primarily in the U.K. and entirely outside of the United States.  The only thing Viacom did in the United States was grant JHS a License to use the *SpongeBob* trademarks on the Ukulele—and that License expressly *excludes* any right to use the trademarks in the United States.  JHS was not permitted to market or sell the Ukulele in the United States, and in fact it did not market or sell the Ukulele in the United States.  There are no relevant activities whatsoever in the United States.  (Holsom Decl. ¶¶ 2-3 & Exh. A; Drumm Decl. ¶ 7).

As discussed more fully in Section II, *infra*, Gibson's Complaint offers no allegations to the contrary.  Gibson has presented no evidence of any sales in the United States; instead, it has merely asserted claims of U.S. marketing and sales on "information and belief."  (Compl. ¶¶ 7, 24).  For the reasons discussed below, these conclusory and unsupported allegations are insufficient to survive even a motion to dismiss for failure to state a claim on which relief may be granted, and are certainly insufficient to survive this motion, when Defendants have affirmatively provided definitive evidence that the Ukulele was *not* marketed or sold in the United States.  (Holsom Decl. ¶¶ 2-3; Drumm Decl. ¶ 7).[4]

---

[4] To the extent Gibson asserts subject matter jurisdiction on the grounds that it itself (or its attorney or agent) purchased a *SpongeBob* Ukulele on a U.K. website and had that instrument shipped to the United States, this claim fails as a matter of law.  It is well-settled that a plaintiff cannot manufacture a trademark claim solely by its own actions.  *See, e.g.*, *Mattel v. Anderson*, No. 04 Civ. 5275, 2005 WL 1690528, at *2 (S.D.N.Y. Jul. 18, 2005) (holding that purchase by plaintiff's investigator did not confer specific jurisdiction because the investigator "cannot claim to have been confused as to with whom he was dealing").  Indeed, a court in this District actually

MOTION TO DISMISS

1         Courts routinely dismiss trademark cases for lack of subject matter jurisdiction

2   when the allegedly infringing acts are outside the United States and do not affect the

3   United States.  For example, in *Pinkberry, Inc.*, 2011 WL 6101828, the court

4   dismissed a trademark claim brought by the Pinkberry frozen yogurt company

5   against a competitor who sold yogurt under the "Snola" name in the United States,

6   and had also filed an application in Japan for the "Pinkberry" trademark in Japan.

7   Pinkberry initiated a cancellation proceeding in Japan, and also filed suit in the

8   United States under the Lanham Act and California state law.  Even though both

9   parties were U.S. corporations, and even though the trademark proceedings in Japan

10  did adversely affect Pinkberry in the United States (by prohibiting its expansion into

11  Japan, *inter alia*), the U.S. court found that it had no jurisdiction over the activities in

12  Japan and dismissed the case at the pleading stage under Rule 12(b)(1).  *Id*. at *8.

13        Similarly, in *Love v. The Mail on Sunday*, the court granted summary

14  judgment against a Lanham Act claim by Mike Love of The Beach Boys for lack of

15  subject matter jurisdiction.  473 F. Supp. 2d 1052 (C.D. Cal. 2007), *aff'd sub nom.*,

16  *Love v. Associated Newspapers, Ltd*., 611 F.3d 601, 612-14 (9th Cir. 2008).  Mr.

17  Love claimed a Lanham Act violation for the creation and sale of an album of

18  "cover" versions of Beach Boys songs in the United Kingdom, but the court found

19  that the album was conceived in the United Kingdom, manufactured in Germany,

20  and the only copies purchased in the U.S. were purchased by the plaintiff's attorney

21  further to the litigation.  611 F.3d at 613.

22        And in *Stevo Design, Inc. v. SBR Mktg. Ltd*., No. 2:11-CV-0304, 2012 WL

23  846569 (D. Nev. Mar. 13, 2012), the court dismissed for lack of subject matter

24  jurisdiction because "all infringement took place on [the defendant's] website

25  ───────────────────────

26  sanctioned the plaintiff's counsel for filing a declaration from a former client and co-plaintiff, without disclosing the relationship, stating that he purchased the recording

27  at issue over eBay.  *Love v. The Mail on Sunday*, 473 F. Supp. 2d 1052, 1059 (C.D. Cal. 2007), *aff'd sub nom.*, *Love v. Associated Newspapers, Ltd*., 611 F.3d 601 (9th

28  Cir. 2008).

MOTION TO DISMISS

operated entirely from Costa Rica," "[t]here are no allegations of any direct infringement within the United States," and the plaintiff "failed to identify a single user of [the defendant's] website that lives in the United States and uploaded the [allegedly infringing] reports." *Id.* at *2.  The court further recognized that while the plaintiff's complaint did plead alleged effects on U.S. commerce, "such allegations are insufficient to constitute a claim under either the Copyright Act or the Lanham Act." *Id.*

This authority squarely supports dismissal here.  The allegedly infringing activity is the manufacture and sale of a V-shaped ukulele.  Viacom simply licensed JHS to use the *SpongeBob SquarePants* trademarks in connection with JHS's manufacture and sale outside of the United States.  Moreover, notwithstanding Plaintiff's conclusory and unsupported allegations of U.S. sales, the manufacture and sale of the Ukulele occurred entirely outside the United States, and predominantly in the United Kingdom.  Particularly given the small number of instruments actually sold—approximately 339 units worldwide, all outside the United States, for total profits of only £2310:82 (approximately $3,637.46 USD)—and further given that JHS has independently withdrawn this particular model from its *SpongeBob* line for business reasons, there is not even the remotest possibility of any meaningful effect on U.S. commerce.  (Drumm Decl. ¶ 8).  This factor weighs heavily in favor of dismissal.

### 2.   Prong 2:  There Is No Cognizable Injury to Plaintiff in the United States

Gibson has suffered no cognizable injury in the United States from the *SpongeBob* Ukulele.  Because JHS has never engaged in any U.S. activity with the Ukulele, Gibson's primary claim to injury appears to be that JHS has wrongfully appropriated the "Flying V®" trademarks in the United Kingdom.  But of course, U.S. trademarks and the Lanham Act apply in the United States, not the United Kingdom, and JHS has not sold the *SpongeBob* Ukulele in the United States.

MOTION TO DISMISS

1  Moreover, even were Gibson to assert some other, indirect harm—for example, loss

2  of U.S. sales resulting from some loss of "goodwill" abroad—it is well-settled that

3  such claims are too attenuated to be cognizable under the Lanham Act.  *See, e.g.*,

4  *Love*, 611 F.3d at 613 (plaintiff musician's claim that sale of tickets to his U.S.

5  concerts decreased as a result of allegedly infringing music sales in Europe was "too

6  great a stretch" to present a cognizable injury under the Lanham Act).  This factor

7  weighs in favor of dismissal as well.

8       **3.     Prong 3:  There Is No United States Interest Sufficiently

9              Strong To Justify An Assertion of Extraterritorial Authority

10             In The United Kingdom**

11      This factor requires a balancing of multiple interests, including conflicts of law

12  or policy, the relative effects on U.S. commerce vs. foreign commerce, the presence

13  or absence of intent to harm or affect U.S. commerce, and the relative importance of

14  the charged violations within the U.S. as compared to charged violations abroad.

15  *Star-Kist Foods*, 769 F.2d at 1395-96.  All of these factors weigh heavily in favor of

16  dismissal here.

17      **The Degree Of Conflict With Foreign Law Or Policy.**  Assertion of

18  extraterritorial authority here has the potential to create a conflict with trademark

19  laws in the European Community and the United Kingdom.  In addition to its U.S.

20  marks, it appears that Gibson has also obtained a Community Trade Mark ("CTM")

21  from the European Union's authorities in a V-styled body shape and several in the V-

22  styled headstock, and has also applied for additional CTMs in the headstock shape

23  and the word mark "FLYING V"—which applications remains pending.

24  (Declaration of Thomas Nolan ("Nolan Decl."), filed concurrently, at Exhs. A-F).[5]

25  _____

26  [5] A search of the United Kingdom's Intellectual Property Office's website,
   www.ipo.gov.uk/, further reveals that Gibson actually applied for trademarks in a V-

27  styled guitar body and symmetrical (six tuning peg) headstock, respectively, in
   November 2010, and subsequently withdrew both applications in January 2011.

28  (Nolan Decl. Exhs. G and H).

MOTION TO DISMISS

Enforcing Gibson's U.S. trademarks over activity in the U.K. would effectively expand Gibson's alleged U.S. rights into the U.K., when Gibson already holds CTMs applicable in the U.K. (in the V-styled body and headstock) and is seeking to further expand its trademark rights in the U.K. through pending applications.  This weighs heavily against extraterritorial application.  *See, e.g.*, *Star-Kist*, 769 F.2d at 1396 ("Application of the Lanham Act to wholly foreign Philippine commerce could create a conflict with Philippine patent and trademark law and with pending proceedings in that country."); *Pinkberry*, 2001 WL 6101828, at *5 ("A decision by this Court as to how the PINKBERRY trademark may be used in Japan creates a serious potential for conflict with foreign law.").

**The Nationality Or Allegiance Of The Parties And The Locations Or Principal Places Of Business Of Corporations.**  As above, JHS is a United Kingdom corporation with no relevant operations in the United States, and while Viacom is a U.S. corporation, it was not involved in the allegedly infringing acts abroad.

**The Extent To Which Enforcement By Either State Can Be Expected To Achieve Compliance**.  Both the United States and the United Kingdom have robust trademark laws, and if Gibson wishes to pursue trademark remedies in the United Kingdom based on its trademarks in the United Kingdom, there is no apparent obstacle in its way.

**The Relative Significance Of Effects On The United States As Compared With Those Elsewhere**.  Most importantly, the only conduct that Plaintiff claims is infringing—the manufacture and sale of a V-styled ukulele—occurred wholly outside the United States.  The instruments were designed in the United Kingdom by a U.K. corporation (JHS), produced in China, and sold in the United Kingdom and other foreign nations within a defined group of licensed territories which specifically *excluded* the USA.  JHS no longer offers the Ukulele for sale at all, and there were

MOTION TO DISMISS

1   no U.S. sales by JHS in the past.  There are no relevant activities whatsoever in the
2   United States.

3         **The Extent To Which There Is Explicit Purpose To Harm Or Affect**
4   **American Commerce**.  There is no evidence at all of any intent by Viacom or JHS
5   to harm or even affect U.S. commerce—to the contrary, Viacom's License
6   demonstrates precisely the opposite, i.e., a clear intent to *avoid* and *not affect* U.S.
7   commerce.

8         **The Foreseeability Of Harm To U.S. Commerce.**  As there can be no harm
9   to U.S. commerce, there is no foreseeability of such harm.

10        **The Relative Importance To The Violations Charged Of Conduct Within**
11  **The United States As Compared With Conduct Abroad**.  The activities Gibson
12  alleges are infringing—the manufacture and sale of the Ukulele—were conducted
13  entirely outside the United States.  The only activity in the United States was
14  Viacom's grant of a license to the *SpongeBob* trademarks, for use outside of the
15  United States.

16        In sum, the *SpongeBob* Ukulele was not marketed or sold in the United States,
17  Gibson has suffered no cognizable harm in the United States, and there is virtually no
18  U.S. interest at issue, much less one sufficiently strong to assert extraterritorial
19  authority in potential conflict with the U.K.'s own intellectual property laws.  A
20  balancing of the elements above all but requires dismissal for lack of subject matter
21  jurisdiction.

22  **II.**    **IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE**
23         **DISMISSED FOR FAILURE TO STATE A CLAIM ON WHICH**
24         **RELIEF MAY BE GRANTED**

25        A motion made under Rule 12(b)(6) of the Federal Rules of Civil Procedure
26  tests the legal sufficiency of the claims asserted in a plaintiff's complaint, *Conley v.*
27  *Gibson*, 355 U.S. 41, 45-46 (1957), and should be granted where a plaintiff's claims
28  fail to state a claim upon which relief can be granted either because there is a "lack of

MOTION TO DISMISS

a cognizable legal theory" or because of "the absence of sufficient facts under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Moreover, conclusory allegations or legal conclusions do not constitute factual conclusions sufficient to prevent a motion to dismiss. *See Anderson v. Clow*, 89 F.3d 1399, 1403 (9th Cir. 1996); *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1139 (9th Cir. 1996). While facts must be accepted as alleged, a court is not required to accept as true conclusory allegations or legal characterizations, nor must the court accept unreasonable inferences. *Bell v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963 (9th Cir. 2008). Rather, the pleading must state "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged]." *Twombly*, 550 U.S. at 556.

**A.    The Complaint Fails to State a Lanham Act Claim Because It Does Not Adequately Plead Use of the Mark in United States Commerce**

Gibson's Complaint can only state a claim on which relief may be granted if it makes genuine, non-conclusory allegations of actual facts showing that the *SpongeBob* Ukulele was used in United States commerce. 15 U.S.C. §§ 1114(1), 1127. Gibson's Complaint makes only two such allegations, both made solely on "information and belief." These are, in full:

> Upon information and belief, Defendant JHS is engaged in the promotion and sale of various products containing the above listed Viacom trademarks in the United States, including in this District, through their business, catalogs, distributors and website at www.jhs.co.uk. (Compl. ¶ 7); [and]

> Plaintiff is informed and believes, and thereon alleges that Defendants are or have been advertising and selling the Defendants' Unauthorized Products bearing the Flying V Body Shape Design® Trademark, Flying V Peg-Head Design® Trademark and the FLYING V® Trademark on the www.jhs.co.uk website and its product pages at www.amazon.com. (Compl. ¶ 24).

13                                          MOTION TO DISMISS

These allegations are conclusory, unsupported, and insufficient to withstand a motion to dismiss under *Twombly* and *Iqbal*.  As JHS have never had a commercial relationship as a vendor to amazon.com the Ukulele cannot have appeared for sale through that channel as Plaintiff claims, and Gibson's Complaint rightly recognizes that JHS is a U.K. corporation with a U.K. website and U.K. operations.  (Compl. ¶¶ 5-7, 24).  The Complaint further alleges that JHS—not Viacom—"is engaged in the promotion and sale [of the Ukulele] containing the above listed Viacom trademarks."  (Compl. ¶ 7).  JHS was able to do this, of course, because Viacom granted it a License, and that License expressly *precludes* JHS from marketing the Ukulele in the United States.[6]  Gibson presents no actual evidence of sale or offers to sell in in the United States—indeed, it does not even "raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged]."  *Twombly*, 550 U.S. at 556.

### B.  The Complaint Also Fails to State a Lanham Act Claim Against Viacom Because It Does Not Allege Any Infringing Activity By Viacom

As the Complaint does not contest, Viacom did not design, manufacture, market, distribute, or sell the *SpongeBob* Ukulele or any other musical instrument, in the United States or anywhere else in the world.  Viacom simply gave JHS a License to use the *SpongeBob* trademarks in specified countries, all outside of the United States.  Because Plaintiff has not claimed that Viacom itself engaged in any specific infringing activity, Viacom cannot be liable for direct infringement of trademarks.

---

[6] While the court is ordinarily limited to the contents of the complaint in a motion to dismiss under Rule 12(b)(6), the court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *See, e.g.*, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1121 (9th Cir. 2002).  Accordingly, the Court may properly consider the License, not just under Rule 12(b)(1), but under Rule 12(b)(6) as well.

1   Gibson's only possible theory against Viacom individually is its Eleventh Cause of
2   Action, for contributory trademark infringement, and this fails as a matter of law.
3          The Ninth Circuit recognizes a limited cause of action for contributory liability
4   for trademark infringement by a third party.  To be so liable, a defendant must have
5   (1) "intentionally induced" the primary infringer to infringe, or (2) continued to
6   supply an infringing product to an infringer with knowledge that the infringer is
7   mislabeling the particular product supplied.  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
8   494 F.3d 788, 806-07 (9th Cir. 2007) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*,
9   456 U.S. 844, 855 (1982)).[7]  Neither prong is met here.  First, Viacom did not
10  "intentionally induce" JHS to infringe trademarks in the United States.  Far from it—
11  the License expressly *precludes* JHS from marketing any *SpongeBob* products in the
12  United States.  And second, there is no assertion that Viacom supplied JHS with any
13  products at all, much less infringing products with knowledge of mislabeling.
14  Viacom simply licensed the *SpongeBob* trademarks to JHS outside the United States,
15  and JHS arranged the production of its own products—in China—with no further
16  input from Viacom.  This claim too fails as a matter of law.

17  **III.   BECAUSE PLAINTIFF FAILS TO STATE A VALID LANHAM ACT**
18  **        CLAIM, THE COURT LACKS SUPPLEMENTAL JURISDICTION**
19  **        OVER THE RELATED STATE LAW CLAIMS**

20         Gibson recognizes that diversity jurisdiction is unavailable because both it and
21  Viacom are Delaware corporations.  (Compl. ¶¶ 3-4).  Accordingly, the only basis for
22  jurisdiction over the state and common law claims is supplemental jurisdiction under
23  28 U.S.C. § 1367.  (Compl. ¶ 11).  However, supplemental jurisdiction is possible
24  only if the district court has jurisdiction over another, related claim that is part of the
25  same case or controversy.  For the reasons above, Gibson has failed to establish
26  subject matter jurisdiction under the Lanham Act, and therefore, it has also failed to

27  ―――――――――――――
28  [7] Notably, Gibson did not plead a separate cause of action for vicarious trademark infringement.

1  establish eligibility for supplemental jurisdiction over the related state and common

2  law claims.  *See, e.g.*, *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802,

3  807 (9th Cir. 2001); 28 U.S.C. § 1367(a).  Moreover, if the Court dismisses the

4  federal claims under Rule 12(b)(6), the state and common law claims should be

5  dismissed under 28 U.S.C. § 1367(c)(3), and fail on their own merits in any event.

6

7                                            **<u>CONCLUSION</u>**

8          For the foregoing reasons, Viacom respectfully requests that Gibson's

9  Complaint be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction

10  and, in the alternative, under Rule 12(b)(6) for failure to state a claim on which relief

11  may be granted.

12  Dated:  February 7, 2013                    LOEB & LOEB LLP

13

14                                             By: *<u>/s/ David Grossman</u>*
                                                    David Grossman
15                                                  Thomas Nolan

16                                             Attorneys for Defendant
                                               VIACOM INTERNATIONAL INC.

17

18  1167565.4

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS