1  ANDREA E. BATES, ESQ. SBN 192491
2  Abates@Bates-Bates.com
   BATES & BATES, LLC
3  1890 Marietta Boulevard
4  Atlanta, Georgia 30318
   Phone:  (404) 228-7439
5  Fax:    (404) 963-6231

6
7  Attorneys for Plaintiff, GIBSON GUITAR CORP.

8                    U.S. DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
9

10  GIBSON GUITAR CORP., a Delaware )   Case No.  CV12-10870-DDP-AJW
    corporation,                    )
11                                  )   PLAINTIFF GIBSON GUITAR
                                    )   CORP.'S OPPOSITION TO
12              Plaintiff,          )   DEFENDANT VIACOM
                                    )   INTERNATIONAL INC.'S
13  vs.                             )   MEMORANDUM OF LAW IN
                                    )   SUPPORT OF ITS MOTION FOR
14                                  )   ATTORNEY'S FEES
    VIACOM, INTERNATIONAL INC., a   )
15  Delaware corporation; JOHN      )
    HORNBY SKEWES & CO. LTD., a     )
16  United Kingdom corporation and DOES )  **Amended Complaint: March 15, 2013**
    1 through 10,                   )
17                                  )
18                                  )   Judge: Dean D. Pregerson
              Defendants.           )   Hearing Date: July 1, 2013
19                                  )   Time: 10:00 a.m.
                                    )   Courtroom: 3
20                                  )

21

22      Plaintiff Gibson Guitar Corp. ("Gibson") respectfully submits this Opposition to Defendant

23  Viacom International, Inc.'s ("Viacom") Motion for Attorney's Fees pursuant to Lanham Act, 15

24  U.S.C. § 1117(a), respectfully showing the Court as follows:

25      I.     **PRELIMINARY STATEMENT**

26

27

28

The Lanham Act forbids the award of attorney's fees, except in **only exceptional cases**.  The 9th Circuit interprets the exception narrowly, ensuring the exceptional does not become the ordinary.  Viacom asserts that "even the most cursory pre-filing investigation (together with basic common sense)" [*See* Viacom's Motion for Fees, Doc. no. 40-1,4] would have demonstrated the direct infringement claim against it was groundless, meaning the claim itself rests on "absurd" or "just short of frivolous" contentions of law.  The pre-filing investigation revealed an infringing product that contained Viacom's name, logos, trademarks, and copyright notice. [*See* Dec. B Mitchell ¶¶4-5], Furthermore, as this Court will notice the sticker inside of the SpongeBob FLYING V ukulele states that Defendant Viacom is the owner of the copyrights and trademarks related to the Ukulele and that John Hornsby Skewes is the distributor (not the manufacture) of the Viacom owned ukulele. Nowhere on the instrument, itself, does it indicate who is manufacturer. As such, it is more than reasonable to assume that Viacom had and has control over the manufacture of this instrument. [*See* Dec. B Mitchell ¶¶4-5].



To assert that a direct infringement claim based on an infringing product bearing its name, logos, trademarks and copyright notice is "absurd" or "just short of frivolous," taxes the credulity of the credulous. Last, its worth noting that Gibson did contact Defendant Viacom prior to filing its lawsuit and at no time did it state that it had no control over the creation, manufacture and sale of the SpongeBob FLYING V ukulele. [*See* Dec. B. Mitchell ¶3].

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

What basic common sense did not reveal from the product itself is that Viacom and JHS[1] entered into a series of private/confidential license agreement(s).  Once Viacom provided a portion of *one* of those agreements, it placed the case in a different light.  The issue then became whether Viacom exercised sufficient control over the infringing products to constitute secondary liability.  That issue presented a close call for the Court.  The Court read the parties' briefs and heard lengthy oral arguments on the issue.  Still not convinced which way to rule, the Court took the issue under submission and deliberated over the debatable issues of law and fact.

After deliberation, the Court found Gibson alleged arguably "more control" than in the case on point, Perfect 10[2].  [*See* March 17, 2013 Order, Doc. No. 36, p. 5, *See also* Dec A. Bates Ex. B.] The Court, however, concluded that "more" did not appear to be enough.  While Gibson respectfully disagrees with the ruling, it appreciates the Court's deliberation. [*See* Dec. of A Bates ¶4.]  What basic common sense tells us is the Court with its limited judicial resources does not deliberate over claims that are "absurd" or "just short of frivolous"; rather, the Court uses its resources to decide debatable issues of law and fact.  And learned counsel for Viacom knows that.

Accordingly, as Gibson's claims did not rest on "absurd" or "just short of frivolous" positions, this Court should deny Viacom's extraordinary Motion for Attorney's Fees.

**II.   ARGUMENT AND CITATION TO AUTHORITY**

This case presented debatable issues of law and fact, not absurd or just short of frivolous ones.   The Lanham Act provides that only in "exceptional cases" the court "may award

---

[1] JHS is shorthand for John Hornsby Skewes & Co. Ltd.
[2] *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 799 (9th Cir. 2007) (*en banc*)

reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).   The Ninth Circuit construes the "exceptional cases" requirement narrowly.  *Classic Media, Inc. v. Mewborn,* 532 F.3d 978, 990 (9th Cir. 2008).  The exceptional standard is met "when the non-prevailing party's case is groundless, unreasonable, vexatious, or pursued in bad faith."  *Id.* (quoting *Gracie v. Gracie,* 217 F.3d 1060, 1071 (9th Cir. 2000); internal quotation marks omitted).[3]

In its Motion for Attorney's Fees, Viacom does not assert Gibson's claims against it were unreasonable, vexatious, or pursued in bad faith; rather, it hangs its hat on the "groundless" prong.  A claim is considered factually groundless where there is "no reasonable basis to believe" in the factual allegations underlying the claim and is considered legally groundless where there is "no legal basis" for the claim itself, which instead rests on "absurd" or "just short of frivolous" contentions of law.  *Brown v. Elec. Arts, Inc.,* 722 F. Supp. 2d 1148, 1152 (C.D. Cal. 2010) *(Citing Cairns v. Franklin Mint Co.,* 115 F. Supp. 2d 1185, 1188–89 (C.D. Cal. 2000).  Thus, if the claim raises "debatable issues of law and fact," then it cannot be said that the case is an "exceptional" one warranting an award of attorney fees.  *Brown v. Elec. Arts, Inc.,* 722 F. Supp. 2d 1148, 1152 (C.D. Cal. 2010) (Citing *Stephen W. Boney, Inc. v. Boney Servs., Inc.,* 127 F.3d 821, 827 (9th Cir. 1997).

[3] The Ninth Circuit has recognized cases may be "exceptional" on a showing of "something less than bad faith"; for example, when a party raises "groundless arguments and creat[es] both serious inconvenience and economic hardship" for the opposing party. *Stephen W. Boney, Inc. v. Boney Servs., Inc.,* 127 F.3d 821, 825–27 (9th Cir. 1996). In determining whether a case is exceptional, the Ninth Circuit has also considered a party's engagement in a "pattern and practice of abusive litigation practices." *Lahoti v. Vericheck, Inc.,* 636 F.3d 501, 510–11 (9th Cir. 2011). Viacom does not allege that Gibson engaged in a pattern and practice of abusive litigation practices, nor can it.

1

2

Gibson's direct and secondary liability claims presented debatable issues of law and fact; thus, the Court should deny Viacom's extraordinary Motion for Attorney's Fees.

3

4

**A.      Contrary to Viacom's assertion, the direct infringement claims against Viacom in the Original Complaint were not groundless.**

5

6

7

8

9

10

11

"As a preliminary matter, the sheer fact that a motion to dismiss is granted does not suffice to show that the claim was groundless or was not a colorable claim." *Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148, 1152 (C.D. Cal. 2010). "Otherwise, *every* case in which a motion to dismiss a Lanham Act claim was granted would be considered an 'exceptional' case and soon the exceptional would become the ordinary.'" *Id.* [Emphasis in original].

12

13

14

15

16

17

18

19

20

21

22

To transform this case from the ordinary to the exceptional, Viacom asserts that "even the most cursory pre-filing investigation (together with basic common sense)" [*See* Viacom's Motion for Fees, Doc no. 40-1,4] would have demonstrated that the direct infringement claims against Viacom were groundless.  That assertion, however, is not grounded in the facts of this case. Notably, both Gibson and this Court first learned that Viacom was a licensor when Viacom attached a heavily redacted 2012 License Agreement to its Motion to Dismiss. [*See* Dec of A Bates, ¶1 Exhibit A; *see also* Dec. of B Mitchell ¶3]  Presumably, Viacom redacted the agreement because the agreement was confidential and therefore contained information that is not generally known to the public, *i.e.*, the opposite of "basic common sense."

23

24

25

26

27

On the other hand, if the heavily redacted 2012 License Agreement could have been discovered through (1) "even the most cursory pre-filing investigation" or (2) through the exercise of "basic common sense," Viacom would not have had to redact the agreement: the document would be available to the public through a cursory pre-filing investigation, and its

28

1
2
3
4
5

contents would be so generally known to the public to equate to the knowledge and experience that most people already have, *i.e.*, common sense.  This isn't and wasn't so.

Rather, the pre-filing investigation revealed a product that displayed both Viacom and JHS as the parties behind the product. [*See* Dec. B Mitchell ¶¶4-5].

6
7
8
9
10
11



12
13
14
15
16
17
18
19
20
21

The pre-filing investigation did not and could not have revealed the nature of Viacom and JHS' relationship because the product itself does not mention the license agreement nor is the agreement available to the public. Without knowing the terms of the license agreement, Viacom's copyright notice on the infringement product along with the prominent display of its trademarks on the infringing products did create "debatable issues of law and fact" regarding whether Viacom was directly liable for the infringing product.  This is particularly true when one examines this case under the pleading lenses when all the facts of the case are not evident.  [*See* Dec. B Mitchell ¶¶4-5].

22
23
24
25
26
27
28

Conversely, it is a far stretch to say that it is an "absurd" or "just short of frivolous" contention to claim that an individual that labels a product with its trademarks and with its copyright notice may be liable for direct infringement.  In this regard, this Court did not find it was an "absurd" or "just short of frivolous" position for Gibson to claim that Viacom may be

---

1    directly liable; rather, the Court stated that Gibson must articulate which acts were performed by

2    which Defendant.  [*See* March 8, 2013 Order, Doc. No. 24 at p. 7, *See also* Dec A. Bates Ex. B.]

3
         Armed with the heavily redacted 2012 Agreement (that it could NOT have obtained

4    through the most cursory pre-filing investigation or through basic common sense), Gibson again

5
     attempted to articulate which acts were performed by which Defendant in its Amended

6
     Complaint.

7
8
              B.      **Contrary to Viacom's assertion, Gibson's secondary infringement claims**
9                     **in the Amended Complaint were not groundless.**

10
         Viacom does not explain how Gibson's secondary liability claims were groundless, *i.e.*,

11
     absurd or just short of frivolous; rather, it simply claims that "these claims too were doomed from

12
     the outset." [*See* Viacom's Motion for Fees, Doc No. 40-1, 4.]  In this Court May 17, 2013 Order

13
14   dismissing these claims, it did not find these claims "doomed from the outset," "absurd" or "just

15   short of frivolous."  Rather, this Court analyzed for thirteen (13) pages whether Gibson had pled a

16   sufficient amount of control over the infringing products for Viacom to be liable for secondary

17
     infringement. [*See* March 17, 2013 Order, Doc. No. 36, *See also* Dec A. Bates Ex. C]. In its

18
     thirteen (13) page opinion, this Court compared the allegations in the Amended Complaint to the

19
20   allegations in *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 799 (9th Cir. 2007) (*en*

21   *banc*), wherein the Ninth Circuit affirmed dismissal of a complaint for secondary liability against

22   a credit card company based on, *inter alia*, a lack of alleged control over the infringing product.

23
         In comparing the two cases, this Court stated that "Viacom's control is arguably more

24
25   direct than in Perfect 10. . . . Here, Plaintiff's ability to stop the sale of licensed products is

26   arguably 'an affirmative exercise of contractual rights,' since it such ability is an exercise of

27
28

---

PLAINTIFF GIBSON GUITAR CORP.'S OPPOSITION TO DEFENDANT VIACOM
INTERNATIONAL INC.'S MOTION FOR ATTORNEY'S FEES

rights described in a contract.'" [*See* March 17, 2013 Order, Doc. No.36, p. 11, fn 3, *See also* Dec A. Bates Ex. C.]  Although the Court found arguably more control than in <u>Perfect 10</u>, the Court did not find enough control to state a claim for contributory or vicarious liability.  Gibson respectfully disagrees with this Court's conclusion and has sought appeal to the Ninth Circuit to determine whether allegations of more control than in <u>Perfect 10</u> constitute sufficient allegations to state a claim for contributory and vicarious liability.

Gibson's position, however, that more control than in <u>Perfect 10</u> is sufficient to state a claim is not an absurd or just short of frivolous position but is a debatable issue of law and fact. In fact, the Ninth Circuit in <u>Perfect 10</u>, which arguably had less allegations of control, did not find the plaintiff presented an "absurd" or "just short of frivolous position."  Rather, the *en banc* panel in the <u>Perfect 10</u> struggled in a twenty-four (24) page opinion with the debatable issues of law and fact of whether the defendant could be liable for secondary infringement.

Not only did the three learned justices struggle with the issue, they were not unanimous in their opinion.  Chief Judge Alex Kozinski wrote a lengthy dissent, stating: "I disagree with the majority when it claims that defendants do not contributorily infringe on Perfect 10's trademark because they lack '[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark.'"  *Perfect 10, Inc.*, 494 F.3d at 822 (Kozinski, A., dissenting).  As the <u>Perfect 10</u> case demonstrates, reasonable minds–including Judges and lawyers–can and often do disagree about the right legal conclusion to draw from debatable issues of law and fact. Disagreement, however, is a far cry from "absurd" or "just short of frivolous."

Furthermore, this Court struggled with the debatable issues of law and fact in this case, refusing to dismiss the Amended Complaint at the hearing and choosing to take the issue under

submission. As the Court stated during the hearing to dismiss the Amended Complaint, this case does present debatable issues of law and fact that are similar to landlord/tenant and internet service provider cases, wherein the defendants are commonly found to be liable under secondary liability. *See Coach, Inc. v. Goodfellow*, 12-5666, 2013 WL 2364091 (6th Cir. May 31, 2013) ("Because Goodfellow continued to rent spaces at his flea market to vendors that he knew, or should have known, were engaging in infringing activity, and because these facts are sufficient to support a finding of contributory liability under *Inwood* as applied in other circuits, we find no error in the district court's ruling.")

In short, as this case presented debatable issues of fact and law, this is not the exceptional case that warrants the exceptional award of attorney's fees. *Compare Cairns v. Franklin Mint Co.*, 115 F. Supp. 2d 1185, 1189 (C.D. Cal. 2000) aff'd, 292 F.3d 1139 (9th Cir. 2002) (finding an exceptional case warranting fees because "plaintiffs' claim for dilution was based on the 'absurd' contention that 'Diana, Princess of Wales' had taken on a meaning other than identification of an individual."); *and Lien v. Compusoft of Kalamazoo, Inc.,* 1991 WL 641575, at *5 (W.D. Mich. 1991) (finding an exceptional case warranting fees because "[defendant's] lack of cooperation and disrespect for the judicial process constitute exceptional circumstances warranting an award of attorney fees to plaintiff in the action.") with *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 827 (9th Cir. 1997) (affirming denial of attorney's fees because non-prevailing party's case was not frivolous and raised debatable issues of law and fact); *and Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.,* 781 F.2d 604, 612 (7th Cir. 1986) (denying attorney's fees where opposing party's action was not frivolous and raised debatable issues).

**C.      The fees Viacom seeks are not reasonable, but that is an issue for another day.**

Viacom is correct that the issue of whether fees are recoverable is first decided before the Court entertains a fee application.  In the event this Court does find this case constitutes an extraordinary case where fees are recoverable, Gibson will present its argument to the Court of whether the fees sought are reasonable under the well-established *Lodestar* method: multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933 (1983).

Gibson will note, however, the fact it took a partner, a senior associate, a senior paralegal, and a junior paralegal 157.20 (presumably reasonable) hours to draft two motions to dismiss undercuts Viacom's assertion that the most cursory pre-filing investigation and basic common sense show the claims against it were absurd or just short of frivolous.  Common sense, on the other hand, teaches us that it took so long to draft the motions to dismiss because there were debatable issues of law and fact in this case.

**III.   CONCLUSION**

Accordingly, Gibson respectfully requests that this Court deny Viacom International, Inc.'s Motion for Attorney's Fees.

Respectfully submitted, this 7th day of June 2013.

                                    BATES & BATES, LLC


                                         /s/Andrea E Bates
                                    ANDREA E. BATES
                                    Attorneys for PLAINTIFFS
                                    Gibson Guitar Corp.