O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GIBSON BRANDS INC., a Delaware corporation,

Plaintiff,

v.

VIACOM INTERNATIONAL INC., a Delaware corporation; JOHN HORNBY SKEWES & CO., LTD., a United Kingdom corporation,

Defendants.

Case No. CV 12-10870 DDP (AJWx)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

[Dkt. No. 63-1.]

Presently before the court is Defendant John Hornby Skewes & Co. Ltd.'s ("JHS") Motion to Dismiss Plaintiff's First Amended Complaint. (DKT No. 63-1.) JHS moves that the court dismiss the case for lack of subject matter jurisdiction and, in the alternative, for failure to state a claim upon which relief may be granted. Having considered the parties' submissions and heard oral argument, the court adopts the following order.

///

///

///

**I. BACKGROUND**

Plaintiff Gibson Brands Inc. ("Gibson") owns trademarks to the Flying V Body Shape Design Trademark, the Flying V. Peg-Head Design Trademark, and the word mark “Flying V. (FAC ¶ 2.) Defendant JHS is a United Kingdom corporation that promotes and sells musical instruments. (Id. ¶ 7.) Gibson alleges that Defendant JHS "is or has been directly and indirectly advertising and selling" products using Gibson’s Flying V trademarks. (Id. ¶ 24.) In particular, Gibson’s complaint concerns the Spongebob SquarePants Flying V Ukulele (the "Ukulele"), a ukulele bearing the image of the SpongeBob Squarepants cartoon character formed in a V-shape. (FAC Ex. D, E.)

Gibson also named as a defendant Viacom International Inc. (Viacom), a Delaware corporation that owns trademarks for SpongeBob Squarepants. Gibson alleged various forms of secondary liability against Viacom, (Id. ¶ 6), in connection with a license Viacom granted JHS to use its SpongeBob Squarepants trademarks on certain musical instruments, including ukuleles, in certain specified countries, excluding the United States. (FAC Ex. G.) On May 17, 2013, this court dismissed Gibson’s claims against Viacom for failure to state a claim upon which relief could be granted. (DKT No. 36.) That order did not address Gibson’s claims against JHS.

Gibson asserts claims against JHS for trademark infringement, trademark counterfeiting, false designation of origin, false description of fact and representations, false advertising, trademark dilution, trade dress infringement, and analogous state law claims. (FAC ¶¶ 42-67.)

The infringing activity alleged by Gibson principally involves the "advertising and selling" of unauthorized products bearing Gibson’s Flying V trademarks on the following websites: www.jhs.co.uk, www.worldwidemusic.co.uk, www.ebay.com, www.Strings.ie, www.rakuten.com, and hobgoblin.com. (FAC ¶¶ 23, 24.)

**II. LEGAL STANDARD AND DISCUSSION**

**A. Subject Matter Jurisdiction**

JHS moves to dismiss Plaintiff’s First Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1).

Federal courts are courts of limited jurisdiction. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). A “federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.” Stock West, Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989). When subject matter jurisdiction is at issue, the plaintiff bears the burden of establishing the jurisdiction it asks the court to invoke. See, e.g., Pinkberry, Inc. v.JEC Intern. Corp., 2011 WL 6101828, at *2 (C.D. Cal. 2011) (citing Kokkonen v.Guardian Life Ins. Co., 511 U.S. 375, 377 (1994)).

A Rule 12(b)(1) motion may challenge a complaint’s allegations on their face or with facts. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004); Thornhill Publ’g Co., Inc. v. General Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979). In a factual challenge, the court is not required to accept the allegations of the complaint as true and may consider additional

evidence outside of the pleadings. Maya v. Centex Corp.,658 F.3d 1060, 1067 (9th Cir. 2011); Safe Air, 373 F.3d at 1039. Once the moving party has presented evidence showing a lack of subject matter jurisdiction, the burden shifts to "the party opposing the motion [to] furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Safe Air, 373 F.3d at 1309 (citations omitted). If the plaintiff cannot establish the jurisdiction it seeks to invoke, the court must dismiss the case under Rule 12(b)(1). Here, JHS makes both a facial and a factual challenge to Gibson's assertion of subject matter jurisdiction.

JHS's motion asserts that the court lacks subject matter jurisdiction because all of the allegedly infringing activity occurred outside of the United States. (MTD at 5.) The Lanham Act regulates the use of trademarks in U.S. commerce. 15 U.S.C. §§ 1114(1), 1127. While the Lanham Act may be invoked to enjoin the sale of infringing goods into the United States, see McBee v. Delica Co., Ltd., 417 F.3d 107, 122 (1st Cir. 2005), the Act's application to activity that occurs exclusively overseas is limited. The Ninth Circuit has adopted a three-prong test to determine whether the Lanham Act may be applied to reach the allegedly infringing activity that occurs wholly abroad:

> first, there must be some effect on American foreign commerce; second, the effect must be sufficiently great to present a cognizable injury to plaintiffs under the federal statute; and third, the interests of and links to American foreign commerce must be sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority.

Star-Kist Foods, 769 F.2d 1393, 1395 (9th. Cir.) (citing Timberlane Lumber Co. v. Bank of America National Trust & Savings Ass'n, 549 F.2d 597 (9th Cir.1976); Love v. Associated Newspapers, Ltd., 611 F.3d 601, 612 (9th Cir. 2010).

**B. Application**

As a preliminary matter, Gibson asserts that this court has already ruled that it has subject matter jurisdiction over Gibson’s claims. (Opp. at 6.) The court has not made such a ruling. In response to a motion by another party (Viacom) at an earlier stage in the litigation involving a different complaint, the court found it was not appropriate to dismiss the claims against Viacom for lack of subject matter jurisdiction. (DKT No. 24 at 3.) That order has no bearing on the instant motion.

The court must first determine whether any of the allegedly infringing activity occurred in the United States. If the alleged infringing activities occurred only overseas, the court must then determine whether such activity nevertheless falls within the court’s subject matter jurisdiction.

JHS asserts that all of the allegedly infringing activities occurred outside the United States. It argues that the Lanham Act should not be applied extraterritorially in this case. (MTD at 6.) Gibson responds by asserting that infringing activities have occurred in the United States, pointing to the availability of the allegedly infringing products for purchase by U.S. consumers from various online retailers. (Opp. at 8.)

Having considered the parties’ submissions, the court finds that Gibson has not presented evidence that JHS has engaged in

infringing activities within the United States. The only evidence proffered by plaintiffs of sales of infringing products to U.S. consumers were seven Ukuleles sold to the plaintiffs' counsel by companies other than JHS.[1] JHS asserts, and Gibson alleges no facts to contest, that "there were no direct sales of the Ukulele from JHS or any of its authorized dealers to any consumers in the United States." (Declaration of Dennis Drumm in Support of Motion at 2:27-3:2.) According to JHS, only some 339 Ukulele units were sold, with 93 sold in the United Kingdom and 246 sold in other countries, excluding the United States. Id. JHS asserts that it discontinued the Ukulele for commercial reasons. Id.

Additionally, Gibson alleges that JHS "directly marketed" the SpongeBob Flying V Ukelele in the U.S. while attending the 2010 National Association of Music Merchants show in Los Angeles, California. (Opp. at 9l; Declaration of Andrea Bates in Support of Opposition at 10.) However, documents submitted by Gibson, which include what are apparently printouts of participants' booth locations and an unknown person's webpage on www.myspace.com, do not make clear that JHS marketed the allegedly infringing product. (Bates Decl., Ex. H.)

Because there is no evidence that JHS engaged in infringing activities within the United States, the court must consider whether it has subject matter jurisdiction over any allegedly infringing activities that occurred abroad. In doing so, it applies

---

[1] The online retailers identified by Gibson are www.Amazon.co.uk, www.Rankuten.co.jp, www.ebay.com, www.bedrockcommunications.co.uk, www.hobgoblin.co.uk, www.strings.ie, and www.travemusic.co.uk. (FAC ¶ 24; Declaration of Andrea Bates in Support of Opposition ¶ 17, Ex. 0.)

the three-prong test adopted by the Ninth Circuit in Star-Kist Foods. See 769 F.2d at 1395. The activity in question is JHS's alleged holding out of infringing products for sale on its website in a manner accessible to U.S. consumers.

**1. Effect on U.S. Commerce**

The first prong considers whether there has been an effect arising from the defendant's activities on American commerce. Plaintiff has offered no evidence of such an effect. As noted, JHS presented no evidence that JHS has sold infringing products to consumers inside the United States. The seven Ukuleles Plaintiff has alleged were sold to U.S. consumers were sold not by JHS but by third parties.[2] Nor do the submissions before the court demonstrate any impact on Gibson's foreign commerce. Although

[2] Even if JHS were accountable for the activities of the third party retailers, something not established here, the evidence does not support the exercise of jurisdiction over the present claims. It is noteworthy that the third party online retailers in question are all apparently based overseas and/or direct themselves towards overseas consumers. See Stomp, Inc. v. NeatO, LLC, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) ("[T]he constitutionality of exercising personal jurisdiction [is] directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.") (citing Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D.Pa.1997) (internal citations and quotation marks omitted). The www.Strings.ie website includes the slogan "Ireland's No. 1 String Supplier. (Bates Decl., Ex. I at 34.) The www.rankuten.com website identifies itself as "Japan's #1 shopping site" and charges in yen (though prices are listed in U.S. dollars). (Id. at 35). Each of the advertisements on www.ebay.com list prices in British pounds. (Id. at 42-46.) Gibson asserts that the retailer Hobglobin Music-Stoney End Harps will ship from its Redwing, Minnesota store location, (Opp. at 9), but the underlying record indicates that the company could only do so after having the item imported from its British counterpart store. (Bates Decl., Ex. N.) While a U.S. consumer actively seeking a product may be able to purchase it abroad and have it shipped to the United States, the overseas location and orientation of the online retailers tend to diminish the likely effect on U.S. commerce and therefore the appropriateness of exercising jurisdiction.

Gibson suggests that the availability of infringing items on websites hosted overseas could impact its business in a variety of countries around the world, (Declaration of David Berryman in Support of Motion at 9), it has not asserted any facts or proffered any evidence to show such an impact. In short, the facts alleged in the submissions before the court cannot support a finding that JHS's activities affected U.S. commerce, whether domestic or foreign.

**2. Cognizable Injury to Plaintiff**

The second prong considers whether plaintiffs have alleged a cognizable injury in the United States as a result of the defendant's activities. Because Gibson has not presented evidence that JHS has sold products to U.S. consumers, it cannot allege harm arising from such sales. Gibson might nevertheless allege cognizable harm arising from activities that occurred abroad if it can "present[] evidence that the complained of actions caused [it] monetary injury in the United States." Love v. Associated Newspapers, Ltd., 611 F.3d 601, 613 (9th Cir. 2010). However, there is no cognizable injury where "the connection between loss of business and its proximate cause is too attenuated." Pinkberry, Inc. V. JEC Intern, Corp., 2011 WL 6101828 (C.D. 2011). See Love, 611 F.3d at 613 (musician's claim that sale of tickets to his U.S. concerts decreased as a result of allegedly infringing music sales in Europe was "too great a stretch" to present a cognizable injury under the Lanham Act).

Gibson appears to assert that it will suffer monetary harm in the United States because consumers who purchase the product abroad will bring the product into the United States, resulting in

confusion among U.S. consumers, or that online resellers will sell the product to American consumers. (Berryman Decl. at 8-9.) The court finds, however, that both theories are too attenuated to constitute cognizable theories of injury. Moreover, Gibson has no presented evidence of such injury.

**3. Interest of the United States**

The third prong considers whether the interest and links to American foreign commerce are sufficiently strong in relation to those of other nations to justify the assertion of extraterritorial authority. The court must weigh the following seven factors: (1) the degree of conflict with foreign law or policy, (2) the nationality or allegiance of the parties and the locations or principal places of business of corporations, (3) the extent to which enforcement by either state can be expected to achieve compliance, (4) the relative significance of effects on the United States as compared with those elsewhere, (5) the extent to which there is an explicit purpose to harm or affect American commerce, (6) the foreseeability of such effect, and (7) the relative importance to the violations charged of conduct within the United States as compared with conduct abroad. Star–Kist, 769 F.2d at 1395–96. Each factor is considered in turn.

**i) The Degree of Conflict.** The first factor examines the degree of conflict with foreign law or policy. The court agrees with JHS that the court’s assertion of extraterritorial authority has the potential to create conflicts with trademark law in the United Kingdom. According to submissions by JHS, Gibson has applied for United Kingdom trademarks in a V-styled guitar body and a symmetrical (six tuning peg) headstock in 2010, though

subsequently withdrew the applications in January 2011. (MTD at 12; Davis. Decl., Ex. D at 11-26.) Given Gibson's apparent interest in obtaining trademarks in the United Kingdom, an order by this court concerning use of the same designs in the UK creates a risk of conflict with further UK trademark proceedings on the designs. See, e.g., Star-Kist, 769 F.2d at 396 ("Application of the Lanham Act to wholly foreign Philippine commerce could create conflict with Philippine patent and trademark law and with pending proceedings in that country). This factor weighs against exercising extraterritorial jurisdiction of the Lanham Act.

**ii) Nationality.** The second factor examines the nationality or allegiance of the parties and the locations or principal places of business of any corporations involved in the action. JHS is a United Kingdom corporation. It does not appear to have meaningful relevant operations in the United States. As JHS notes, although Viacom is an American company, the claims against it have been dismissed. This factor weighs against exercising extraterritorial jurisdiction.

**iii) Achieving Compliance.** The third factor examines the extent to which an order by a U.S. court can be expected to achieve compliance with the Lanham Act. The principal concerns articulated in Gibson's complaint relate not to the conduct of JHS but to that of various online retailers who, Gibson alleges, have sold infringing product acquired from JHS to U.S. consumers. Gibson has not demonstrated that JHS controls the conduct of these retailers, none of which are parties in this lawsuit.[3] The court is therefore

---

[3] The only evidence introduced by Gibson to this effect is a (continued...)

concerned that, even if the these retailers are engaging in infringing behavior, the court is not in a position to induce compliance by these companies. Cf. Airwair Int'l Ltd. v. Vans, Inc., 2013 WL 3786309 *4 (N.D. Cal. 2013) (holding that a judgement in favor of a licensor company is likely to induce compliance by licensee because licensor "is able to control the activities of its licensee"). This factor weighs against exercising extraterritorial jurisdiction.

**iv) Relative Significance of Effects.** The fourth factor examines the relative significance of effects on the United States commerce as opposed to commerce elsewhere. The Ukulele unit was manufactured in China. JHS, a United Kingdom company, asserts, and Gibson has presented no evidence to contest, that of the 399 Ukulele units JHS and its authorized dealers sold before discontinuing the product, 93 were sold in the United Kingdom and 246 were sold in other countries, with none sold in the United States. (Drumm Decl. at 2:27-3:2.) This factor weighs against exercising extraterritorial jurisdiction.

**v) Purpose to Harm or Affect U.S. Commerce.** Factor five examines the extent to which there is an explicit purpose to harm or affect American commerce. The court does not have before it evidence of any intent to harm U.S. commerce. As JHS points out, (MTD at 13.), JHS's license from Viacom to use the SpongeBob trademark on ukuleles specifically excludes sales in the United

[3](...continued)
communication from the internet retailer Tone Deaf Music to JHS's counsel indicating that it would not ship the item in question because it had been warned by its supplier (presumably JHS) to limit sales of the ukulele to the UK and specific EU countries. (Opp at 5; Bates Decl., Ex. J.)

States, indicating an intent to avoid U.S. commerce. The court has no evidence before it that JHS has violated the terms of the license. This factor weighs against extraterritorial jurisdiction.

**vi) Foreseeability.** Factor six examines the foreseeability of harm or effect on American commerce. It is certainly arguable that JHS could foresee that retailers would sell products infringing Gibson's trademark rights within the United States. As Gibson points out, many of these companies distribute globally. (Opp. at 9.) Moreover, Gibson notes that it contacted JHS in December 2011 with a cease and desist letter informing it of the allegedly infringing product was being sold in the United States, but that JHS took no timely action. (FAC ¶ 27.) This factor weighs in favor of exercising extraterritorial jurisdiction.

**vii) Relative Importance:** The seventh factor examines the relative importance to the allegations of conduct that occurred within the United States as compared with conduct that occurred abroad. As discussed above, the court has seen no evidence that JHS marketed or sold the product within the United States. As JHS points out, (Opp. at 13), JHS did sign a licensing agreement for the SpongBob Ukulele with Viacom in the United States, but the agreement provided for use only outside the United States. In short, there is no evidence before the court that JHS engaged in any significant activity within or having a connection with the United States.

## III. Conclusion

The court finds that the weight of the evidence and authority leans against the exercise of extraterritorial jurisdiction in this

case. For the reasons discussed above, this finding is fatal to Gibson’s assertion that the court has subject matter jurisdiction over its Lamham Act claims against JHS. Additionally, because Gibson’s state law claims are based on supplemental jurisdiction under 15 U.S.C. § 1367, the court must dismiss those claims as well. Finally, because the court finds that it lacks federal subject matter jurisdiction and must dismiss this case, it need not reach JHS’s motion to dismiss for failure to state a claim or its motion for a transfer of venue.

IT IS SO ORDERED.

Dated: November 5, 2013

DEAN D. PREGERSON
United States District Judge