O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIBSON BRANDS INC., a Delaware corporation,<br><br>                Plaintiff,<br><br>   v.<br><br>VIACOM INTERNATIONAL INC., Delaware corporation; JOHN HORNBY SKEWES & CO., LTD., United Kingdom corporation,<br><br>                Defendants.<br>_____ | Case No. CV 12-10870 DDP (AJWx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS**<br><br>[Dkt. No. 88] |

    Presently before the court is Plaintiff Gibson Brands, Inc.'s ("Gibson") Motion for Sanctions Under the Court's Inherent Powers. (Dkt. No. 88.) Having considered the parties' submissions, the court denies Plaintiff's Motion.

    The litigation history of this case is familiar to the parties and set forth in this Court's prior Order granting Defendants' Motion to Dismiss (Dkt. No. 70.) In brief, Plaintiff Gibson brought suit against Defendant John Hornby Skewes & Co. Ltd.'s ("JHS") alleging that JHS sold products in violation of Gibson's Flying V trademarks. (First Amended Complaint ¶24.) In particular, Gibson's

complaint concerns the SpongeBob SquarePants Flying V Ukulele. (FAC Ex. D, E.) Gibson also named as defendant Viacom International Inc. (Viacom), a corporation that owns trademarks for SpongeBob Squarepants. This Court dismissed Gibson's claims against Viacom for failure to state a claim upon which relief could be granted. (Dkt. No. 36.) It later dismissed claims against JHS for lack of subject matter jurisdiction under Rule 12(b)(1). Of particular importance to the prior order was this Court's conclusion that, because all allegedly infringing activity occurred outside of the United States, the weight of the evidence counseled against exercising extraterritorial jurisdiction under the Lanham Act.

On appeal, the Ninth Circuit reversed in part and remanded the case to the district court to determine whether Gibson's complaint survives under Rule 12(b)(6). <u>Gibson Brands, Inc. v. Viacom Int'l, Inc.</u>, No. 13-57050, 2016 WL 685026 (9th Cir. Feb. 19, 2016). JHS then filed a new Motion to Dismiss at the direction of this court. (Dkt. Nos. 82 & 83.) In its Opposition to the Motion to Dismiss, Gibson drew the court's attention to newly uncovered evidence that it believes would have altered the course of earlier proceedings and proves JHS made material misrepresentations to the court.(Dkt. No. 84.) JHS then withdrew its Motion to Dismiss. (Dkt. No. 85.) Gibson now files this Motion for Sanctions.

At the heart of Gibson's motion is a newly discovered licensing agreement between JHS and MTV, a division of Viacom (the "Canada License"). (Gibson's Motion for Sanctions 2.) In prior proceedings, the parties and this Court focused primarily on a separate licensing agreement between JHS and Viacom that authorized JHS to use the SpongeBob trademark on musical instruments in a

number of jurisdictions across Europe, Asia, Africa, and South America. (Declaration of Dennis Drumm ¶5.) As part of its earlier decision, the court found: "JHS's license from Viacom to use the SpongeBob trademark on ukuleles specifically excludes sales in the United States, indicating an intent to avoid U.S. commerce." (Dkt. No. 70 at 11-12.) However, this newly produced licensing agreement between JHS and MTV states that JHS was also authorized to distribute the ukulele in Canada. (Declaration of Brent Davis, Ex. B, C.)

According to Gibson, JHS intentionally withheld this agreement to obscure the fact that JHS had sold the allegedly infringing product in North America. (Mot. 7-13.) Gibson also argues that representatives of JHS made material misrepresentations to the court in an effort to evade disclosure of the Canada License. Specifically, it notes a statement by JHS's Managing Director that "JHS marketed and offered the Ukulele for sale solely in the Licensed Territory–principally in the United Kingdom and Europe, and never in the United States." (Drumm Decl. ¶7.) After finding the Canada License, Gibson has also identified a previously undisclosed distributor, M.I.D.C., that JHS worked with to distribute the ukuleles in North America. (Dkt. 84.) Gibson now submits additional evidence related to M.I.D.C.'s marketing efforts that it believes controverts JHS's previous assertion that it never marketed the ukuleles in the United States. (Declaration of Kurt Schuettinger, Exs. 5-12.) In particular, Gibson points to an advertisement for the SpongeBob Ukulele placed in a trade publication in 2008 contrary to Mr. Drumm's statement that the

3

```
 1  SpongeBob Ukulele was not distributed until 2012. (Schuettinger
 2  Decl., Ex. 9; Drum Decl. ¶8.)
 3       In its opposition, JHS denies that it engaged in a conspiracy
 4  to withhold evidence or make material misrepresentations to the
 5  court. (JHS's Opposition to Plaintiff's Motion for Sanctions 1.) It
 6  notes that counsel for JHS first learned of the existence of
 7  M.I.D.C. when Gibson filed its opposition papers to the renewed
 8  Motion to Dismiss. (Davis Decl. ¶15.) JHS also explained that it
 9  believed the licensing agreement with Viacom, the other named
10  defendant, was the relevant licensing agreement and that there was
11  no bad faith effort to hide the Canada License from the court.
12  (Opp. 11.) Finally, JHS argues that existence of the Canada License
13  is immaterial because it does not affect JHS's central claim that
14  it never marketed or sold the SpongeBob Ukulele in the United
15  States. (Id.)
16       This Court has inherent authority to "fashion an appropriate
17  sanction for conduct which abuses the judicial process." Chambers
18  v. NASCO, Inc., 501 U.S. 32 at 44-45 (1991). "Before awarding
19  sanctions under its inherent powers, however, the court must make
20  an explicit finding that [the] conduct 'constituted or was
21  tantamount to bad faith.'" Primus Auto. Fin. Servs., Inc. V.
22  Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (quoting Roadway Exp.,
23  Inc. v. Piper, 447 U.S. 752, 767 (1980)).
24       Based on the facts before it, this Court cannot conclude that
25  JHS's actions rise to the level of bad faith. The court
26  acknowledges, and indeed shares, some of Gibson's concerns
27  regarding the newly discovered evidence. In particular, the failure
28  to disclose a related licensing agreement-whether or not it altered
```

4

JHS's defense that it did not sell the allegedly infringing products in the United States-or to ensure the accuracy of dates in a sworn declaration is of concern. The court also acknowledges, however, counsel for JHS's explanation that they were not aware of these facts prior to Gibson's most recent filings. While sanctions are not merited at this time, the court expects full compliance with discovery obligations. The court also notes that, without prejudging admissibility in this case, parties may be able to refer to and argue about alleged discovery abuses as such abuses may be relevant to credibility or other issues in the trial.

IT IS SO ORDERED.

Dated: June 21, 2016

DEAN D. PREGERSON
United States District Judge

5